FILED
2019 Oct-02 PM 04:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARY ABIGAIL HAGEN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action Number |
| | ) **2:18-cv-01169-AKK** |
| **CAMERON NICHOLAS PELLETIER,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Mary Abigail Hagen sustained severe injuries after being partially ejected and pinned under the Ford 150 truck in which she was a passenger. The driver of the truck, Cameron Pelletier, lost control of the vehicle, causing it to veer off the road and hit a bank of bushes before flipping multiple times. Hagen filed this lawsuit, alleging one count for negligence, recklessness, and wantonness, and a second for negligence and wantonness per se. Doc. 1. Pelletier filed a motion for summary judgment, doc. 27, on all of Hagen's claims, and Hagen filed a cross motion for partial summary judgment, doc. 29, on Pelletier's sixth, fourteenth, and fifteenth affirmative defenses. Both motions are fully briefed, docs. 30; 33, and ripe for consideration. After carefully reviewing the briefs, evidence, and relevant law,

Pelletier's motion, doc. 27, is due to be denied as to Hagen's negligence and wantonness claims pleaded in Count I, and granted as to the negligence per se and wantonness per se claims in Count II. Hagen's motion, doc. 29, is due to be granted fully as to Pelletier's sixth defense and on the wantonness claim as to the fourteenth and fifteenth defenses. The matter of Hagen's claims pleaded in Count I is **SET** for a pretrial conference at 2:15 p.m. on October 9, 2019 and for a trial at 9:00 a.m. on November 25, 2019, both at the Hugo L. Black U.S. Courthouse in Birmingham, Alabama. The court directs the parties to the Standard Pretrial Procedures governing all pretrial deadlines, which is attached as Exhibit A.

## I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to

establish that there is a "genuine issue for trial." *Id.* at 324 (citation and quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II. FACTUAL BACKGROUND

This case arises out of an automobile crash that occurred in the early morning of May 20, 2017. Doc. 30-1 at 14. Hagen and Pelletier both attended Birmingham Southern College at the time of the incident, and had started dating sometime before the accident. Docs. 30-1 at 4-5, 13; 30-2 at 4-5. During an earlier trip before the accident to Gatlinburg, Tennessee, Pelletier engaged in dangerous driving maneuvers including "peeling out," "burning out," and "drifting" over Hagen's objections, prompting Hagen to tell him "to not do that with [her] in the car ever again."[1] Doc. 30-1 at 6-12. Pelletier admits to engaging in similar maneuvers when he was sixteen, including "doing donuts in a field," while driving off-road, leading to his passengers sustaining minor injuries. Doc. 30-2 at 7-8. Pelletier further admits he is aware that injuries could result from "speeding and spinning around," *id.* at 8, and "gunning a vehicle and fishtailing or spinning out," *id.* at 9, and that intentionally fishtailing[2] a vehicle is reckless driving, *id.* at 10.

On the night at issue here, Hagen finished an exam that ended at 9 p.m. and went to her friends' apartment to get ready for a party at Pelletier's fraternity. Doc. 30-1 at 14. Hagen drank "a beer or two" before arriving at the party and drank two

---

[1] Hagen describes "peeling out," "burning out," and "drifting" as accelerating to a high rate of speed and then applying the brakes while turning so that the wheels have no traction on the ground. Doc. 30-1 at 6-7.
[2] Hagen describes "fishtailing" as taking a turn at a high rate of speed so that the back end of the vehicle "wave[s]" once the front wheels correct into a straight path. Doc. 30-1 at 26.

vodka and Sprite mixed drinks at the party. Doc. 33-1 at 11-12. At around 2:30 a.m., a friend asked Hagen to come to her campus apartment. Doc. 30-1 at 15. When Hagen told her friend she did not want to walk to the apartment, Pelletier offered to drive her there and Hagen accepted. Doc. 30-1 at 15. Hagen did not compensate Pelletier for the ride. Doc. 27-1 at 11. The two walked to Pelletier's Ford 150 truck. Docs. 30-1 at 16; 30-3 at 3. Neither party used a seatbelt, and by Pelletier's estimation, neither Hagen's mental or physical state merited concern when she entered his truck. Docs. 30-2 at 18; 27-1 at 12.

Pelletier drove the truck around the fraternity house, gaining speeds of approximately 30 miles per hour (twice the campus limit) before "peel[ing] out" as he took a sharp right across the parking lot, causing his truck to skid to the right and fishtail before continuing straight. Docs. 30-1 at 17-28; 30-7 at 2-3; 30-2 at 12-15. Pelletier then accelerated to a faster speed before taking a sharp left turn, running a stop sign and ignoring Hagen's appeals for him to stop. Doc. 30-1 at 17-28. With Pelletier unable to correct the left-hand turn, the truck jumped the curb onto the grass alongside the road, hit several bushes, and flipped multiple times before coming to rest on its side near a tree on the far side of the bushes from the road. *Id.* Hagen was partially ejected from the truck and pinned underneath it when it came to rest. Doc. 33-4 at 3. Hagen sustained several injuries from the crash, fracturing her back, sacrum, and pelvis. Docs. 30-1 at 31; 30-8 at 4. Despite surgery and physical therapy,

Hagen has not fully recovered. Doc. 30-1 at 31.

Pelletier claims he lost control of the truck after suddenly applying the brakes to avoid an animal that had purportedly run into the road. Doc. 30-2 at 20. Hagen did not see an animal, and she claims Pelletier later agreed with her that there was no animal when he visited her in the hospital. Doc. 30-1 at 29-30. One of Pelletier's fraternity brothers who had a full view of the scene from his vantage point on the side deck of the fraternity house heard Pelletier's tires screeching in the parking lot and described Pelletier's maneuvers as peeling out before losing control of the truck and hitting the bushes. Doc. 30-5 at 3-7. The eyewitness did not see an animal, doc. 30-5 at 7, and he does not believe the peeling out he witnessed was prompted by an animal, doc. 30-5 at 8-9. A video of the crash scene taken a few days after the incident by Hagen's grandfather shows continuous tire marks from the fraternity parking lot onto the street where the truck left the roadway. Doc. 30-6.

Hagen engaged an expert witness, Gary Johnson, who is qualified to perform accident reconstruction. Doc. 30-7 at 2. Johnson surmises the tire marks in the parking lot indicated Pelletier heavily applied the brakes while turning right and the marks onto Ninth Alley South were the result of heavy acceleration while turning left. *Id.* at 3. Johnson believes that the truck was traveling between 23 and 35 miles per hour when it left the roadway, and that Pelletier lost control of the truck because he entered the left turn at too high a rate of speed and accelerated when he should

have braked. *Id.* at 2-3. Johnson concludes that if the truck had followed the posted 15 miles per hour traffic limit, Pelletier should have been able to stop before hitting the bushes. *Id.* at 3.

## III. ANALYSIS

Hagen alleges Pelletier was negligent, wanton, and reckless in his operation of the truck, resulting in her severe and permanent injuries, and that his behavior rose to the level of negligence and wantonness per se. Doc. 1-1 at 3-6. Presently before the court are Pelletier's motion for summary judgment on all claims, doc. 27, and Hagen's partial motion for summary judgment, doc. 29, on Pelletier's affirmative defenses that Hagen did not fasten her seatbelt, was contributorily negligent, and assumed the risk for her injuries, doc. 3. The court considers each claim in turn, and, because this action is based on diversity jurisdiction, the court applies Alabama's substantive law in doing so. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### A. Plaintiff's Count I: Recklessness, Negligence and Wantonness

In Count I, Hagen pleads recklessness, negligence, and wantonness. Doc. 1-1 at 5-7. Although these claims are not legally distinct,[3] due to the circumstances of

---

[3] Negligence and wantonness are qualitatively different tort concepts. *Ex parte Essary*, 992 So. 2d 5, 9-10 (Ala. 2007). Recklessness is an element of wantonness. *Ala. Code* § 6-11-20(b)(3) (defining wantonness as "conduct which is carried on with a reckless or conscious disregard of the rights or safety of others"); *see also* § 1:47 Wantonness, 1 Ala. Pers. Inj. & Torts § 1:47 (2019 ed.) (defining recklessness as "careless, heedless, inattentive; indifferent to consequences; marked by

7

the incident at issue, the court will consider negligence and wantonness separately and recklessness within its discussion of wantonness.

### i. Negligence

To sustain a negligence claim under Alabama law, a plaintiff must establish "a legal duty owed to the [plaintiff] or to a class of persons to which the plaintiff belongs, and a breach of that duty, proximately resulting in the injury." *Graveman v. Wind Drift Owners' Ass'n, Inc.*, 607 So. 2d 199, 203 (Ala. 1992). However, the Alabama Guest Passenger Statute provides "the . . . person responsible for the operation of a motor vehicle shall not be liable for . . . damages arising from injuries to . . . a guest while being transported without payment . . . unless such injuries . . . are caused by the willful or wanton misconduct of such operator." *Ala. Code* § 32-1-2 (1975). The status of the person riding in the vehicle as either a paying passenger or a non-paying guest determines whether she may recover damages for injuries sustained by the driver's negligence: a paying passenger may make such a claim, whereas § 32-1-2 bars a guest from doing so. *See Cash v. Caldwell*, 603 So.2d 1001, 1003 (Ala. 1992). Whether the person is a guest or a passenger within the meaning of the statute is usually a question of fact for the jury, but the question becomes one of law for the court when reasonable minds can reach but one conclusion. *Tolbert v.*

---

lack of proper caution: careless of consequences; … having no regard for consequences; uncontrolled; wild").

*Tolbert*, 903 So.2d 103, 112 (Ala. 2004).

Two inquires arise in determining Hagen's ability to recover for her injuries under the Guest Passenger Statute: whether she was a guest or a paying passenger and whether Pelletier engaged in willful or wanton misconduct in his operation of the truck. Both inquiries present questions of fact appropriate for jury determination. For example, reasonable minds may differ as to whether Hagen was a guest or a passenger. Generally, when transportation of a rider confers no benefit on a driver other than those "incidental to goodwill," then the rider is a guest under the meaning of § 32-1-2. *Tolbert*, 903 So. 2d at 112. The record indicates that Hagen began the ride a guest – she did not pay or offer to pay Pelletier for the ride, doc. 27-1 at 11; *see also generally* docs. 27, 29, 30, 33, and that Pelletier gave Hagen the ride out of hospitality rather than in pursuit of a material benefit. However, the relationship between a non-paying guest and the driver is premised upon consent of the guest to accept the ride and any related hazards. *Roe By and Through Roe v. Lewis*, 416 So. 2d 750 (Ala. 1982). If a guest verbally objects to the activities of the driver, those protests may be sufficient to void her consent and change her status from a guest to a passenger. *Id.* And, because Pelletier ignored Hagen's protests, his conduct may qualify as willful. In any event, in light of the evidence that Hagen verbally protested Pelletier's maneuvers, doc. 30-1 at 20, an issue of fact exists regarding whether these protestations changed her status from guest to passenger. A resolution of the issue is

necessary in order to determine whether she can pursue a negligence claim. Therefore, as to this claim, Pelletier's motion fails.

### ii. Wantonness

Under § 32-1-2, to survive summary judgment, Hagen must show substantial evidence that Pelletier engaged in "willful or wanton misconduct." *Ala. Code* § 32-1-2. In light of the disjunctive, Hagen only has to demonstrate the existence of a genuine issue of material fact on one of these elements. Wantonness requires "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9-10 (Ala. 2007). To prevail, the plaintiff does not need to show that "the actor kn[ew] that a person [wa]s within the zone made dangerous by his conduct" or that the actor "entertained a specific design or intent to injure the plaintiff" to prove wantonness. *Id.* Rather, the plaintiff need only show that "the actor is 'conscious' that injury will likely or probably result from his actions." *Id.* Demonstrating this consciousness of injury requires the plaintiff to overcome a rebuttable presumption of the driver's instincts for self-preservation. *Id.* at 12 (noting courts "do not expect an individual to engage in self-destructive behavior"). In the context of an automobile accident, this entails showing that the driver was either so dispossessed of his "normal faculties, such as from voluntary intoxication [that he was] indifferent to the risk of

injury to himself" or that his act was "so inherently reckless" that he showed "depravity consistent with disregard of instincts of safety and self-preservation." *Id.* Put simply, a wantonness determination is wholly fact-dependent. *Central Alabama Electric Cooperative v. Tapley*, 546 So. 2d 371 (Ala. 1989).

As a fact-dependent inquiry, wantonness is a question for the jury, and a court may grant summary judgment on a wantonness claim only when "there is a total lack of evidence from which the jury can reasonably infer wantonness." *Cash*, 603 So. 2d at 1003. Alabama courts have denied summary judgment on wantonness claims when "fairminded [sic] persons in the exercise of impartial judgment could reach different conclusions as to the existence of wantonness." *Berry v. Fife*, 590 So. 2d 884, 887 (Ala. 1991) (reversing grant of summary judgment where a defendant accelerated into an intersection after mistaking a rock hitting the car's windshield for a gunshot). Denial of summary judgment is proper where either a jury could reach different conclusions on whether the undisputed facts constitute wantonness[4]

---

[4] *See Johnson v. Baldwin*, 584 F. Supp. 2d 1322, 1328 (M.D. Ala. 2008) (holding a jury could find the *Essary* self-preservation presumption rebutted by the recklessness of the defendant's behavior where he drove backwards on a high-speed interstate highway); *Coleman v. Smith*, 901 So. 2d 729 (Ala. Civ. App. 2004) (jury question of wantonness existed where driver drove at too high a speed and was traveling down the middle of a road, forcing him to swerve to avoid oncoming traffic); *Clark v. Black*, 630 So. 2d 1012, 1016 (Ala. 1993) (defendant either ignored a stop sign or entered an intersection at a dangerously high rate of speed, despite knowing the intersection had diminished visibility of oncoming traffic due to a hillcrest); *Sellers v. Sexton*, 576 So. 2d 172 (Ala. 1991) (defendant entered a bridge at or near maximum speed despite knowing a wide turn would obstruct her view of oncoming traffic and bridge had been spread with stone in preparation for bad weather); *McDougle v. Shaddrix* 534 So. 2d 228 (Ala. 1988) (defendant drove in front of truck despite it being no more than 50 feet away from her).

or there is a genuine issue of material fact as to whether the driver engaged in wanton behavior.[5]

In the case now before the court, the undisputed evidence establishes that Pelletier lost control of his truck, veered off the road, collided with a bank of bushes, and flipped the truck multiple times. Docs. 30-1 at 19; 27-2 at 7. The parties dispute the events leading up to the truck leaving the road. Hagen claims Pelletier intentionally accelerated and braked through turns, causing the truck to fishtail and skid. Doc. 30-1 at 17-28. Pelletier maintains that he swerved to avoid an animal in the road. Doc. 30-2 at 20. Taking Hagen's claims as true, the court finds genuine issues of material fact that preclude summary judgment. Hagen has provided substantial evidence of her claim of Pelletier's driving maneuvers, and her testimony dovetails with eyewitness accounts and an expert witness's reconstruction of the crash site. Docs. 30-1 17-28; 30-5 at 3-5, 6-7; 30-7 at 2-3. Hagen also claims Pelletier agreed there was no animal, doc. 30-1 at 29-30, the eyewitness did not see an animal, doc. 30-5 at 7, and the expert witness opined the tire tracks were not consistent with evasive maneuvering to avoid an animal, doc. 30-7 at 2-3. Whether Pelletier lost control of the truck because he swerved for an animal or was engaging in dangerous

---

[5] *Allen v. Hill*, 758 So. 2d 574 (Ala. Civ. App. 1999) (genuine issue of material fact existed as to whether driver stopped at a stop sign or sped through an intersection without stopping); *Barker v. Towns*, 747 So. 2d 907 (Ala. Civ. App. 1999) (genuine issue as to whether driver saw a truck approaching and properly yielded).

driving maneuvers is a matter for the jury to resolve as the trier of fact. Therefore, Pelletier's motion on the wantonness claim is also due to be denied.

### B. Plaintiff's Count II: Negligence and Wantonness Per Se

Pelletier further moves for summary judgment on Hagen's claims of negligence and wantonness per se. Doc. 27 at 15-16. Wantonness per se is not a valid claim under Alabama law. *See McCutchen v. Valley Home, Inc.*, 100 F. Supp. 3d 1235, 1240-41 (N.D. Ala. 2015). As for the negligence per se claim, in her response to the motion, Hagen concedes the deficiencies of the claim as pleaded and requests leave of the court and relief from the Scheduling Order to amend Count II to specifically cite *Ala. Code* § 32-5A-190 (Reckless Driving). Doc. 30 at 13. Although Hagen is correct that Pelletier had notice of the reckless driving contention, doc. 30 at 13, the court declines to grant the amendment. As Hagen notes, "Count II . . . is not necessary as [she] can recover the same damages under Count I." *Id.* Therefore, Pelletier's motion on Count II is due to be granted.

### C. Defendant's Sixth, Fourteenth and Fifteenth Affirmative Defenses

Hagen's motion for summary judgment on Pelletier's affirmative defenses is due to be granted in part. To begin, "failure to wear a safety belt . . . shall not be considered evidence of contributory negligence and shall not limit the liability of an insurer." *Ala. Code* § 32-5B-17 (1989); 1 Ala. Pers. Inj. & Torts §3:43 (2019 ed.) ("While some states allow the failure to wear a seat belt to be shown as contributory

13

negligence and/or a failure to mitigate damages in automobile accident cases, Alabama does not."). Accordingly, Hagen's motion on the sixth affirmative defense is due to be granted.

The motion is also due to be granted on Pelletier's fourteenth and fifteenth affirmative defenses of contributory negligence and assumption of risk, doc. 29 at 5, as to Hagen's Count I wantonness claim. *White v. Pratt*, 721 So. 2d 210, 213 (Ala. Civ. App. 1998) (holding contributory negligence and assumption of risk are not valid defenses to wantonness claims); *Tyler v. City of Enterprise*, 577 So. 2d 876, 878 (Ala. 1991). But these defenses are valid defenses to a negligence claim. *Thomas v. Earnest*, 72 So. 3d 580 (Ala. 2011); *Sprouse v. Belcher Oil Co.*, 577 So. 2d 443 (Ala. 1991). As such, in the event Hagen argues to the jury that Pelletier acted negligently, Pelletier is free to raise contributory negligence and assumption of risk in response.

## CONCLUSION AND ORDER

Consistent with this opinion, Cameron Nicholas Pelletier's motion for summary judgment, doc. 27, is **DENIED** as to Count I (negligence and wantonness claims) and **GRANTED** as to Count II (negligence and wantonness per se claims). Mary Abigail Hagen's motion for partial summary judgment, doc. 29, is **GRANTED** as to Pelletier's sixth defense and his fourteenth and fifteenth defenses as applied to Hagen's wantonness claim and **DENIED** as to Pelletier's fourteenth

14

and fifteenth defenses to Hagen's negligence claim. Hagen's negligence per se and wantonness per se claims are **DISMISSED WITH PREJUDICE**. Pelletier's sixth affirmative defense and his fourteenth and fifteenth affirmative defenses to Hagen's wantonness claim are **STRICKEN**.

    **DONE** the 2nd day of October, 2019.

*/s/ Abdul Kallon*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE
